[Cite as *State v. Harris*, 2024-Ohio-246.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,                :

                                    No. 112549

    v.                                 :

RAYSHAWN HARRIS,                        :

    Defendant-Appellant.               :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 25, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-21-664681-A, CR-22-674711-A, and CR-23-678460-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Omar Siddiq and Gregory Ochocki, Assistant Prosecuting Attorneys, *for appellee*.

Mary Catherine Corrigan, *for appellant*.

LISA B. FORBES, J.:

{¶ 1} Rayshawn Harris ("Harris") appeals his five-to-six-year prison sentence, which was imposed after he pled guilty to burglary, attempted felonious assault, and two counts of operating a vehicle while under the influence of alcohol

("OVI"). After reviewing the facts of the case and pertinent law, we affirm the trial court's decision.

## I.    Facts and Procedural History

{¶ 2}    On January 31, 2023, Harris pled guilty to burglary in violation of R.C. 2911.12(A)(1), a second-degree felony, with a notice-of-prior-conviction specification; attempted felonious assault in violation of R.C. 2923.02 and 2903.11(A)(1), a third-degree felony; and OVI in violation of R.C. 4511.09(A)(1)(a), a fourth-degree felony.

{¶ 3}    On February 4, 2023 — four days later — Harris was charged with another OVI. On March 16, 2023, Harris pled guilty to his most recent OVI, bringing his total to six OVI convictions.

{¶ 4}    Also on March 16, 2023, the court sentenced Harris to an indefinite term of two-to-three years in prison for the burglary, to run concurrent to two years in prison for the attempted felonious assault, to run consecutive to 18 months in prison for each of the two OVIs. Harris's aggregate prison term is five-to-six years.

{¶ 5}    Harris appeals raising three assignments of error for our review:

I.  The trial court's sentence was contrary to law.

II.  The appellant's constitutional right to due process was violated when the trial court was neither impartial or neutral.

III.  The trial court erred by imposing an unconstitutional sentence pursuant to the Reagan Tokes Act.

## II. Felony Sentencing

{¶ 6} R.C. 2953.08(G)(2) provides, in part, that when reviewing felony sentences, the appellate court's standard is not whether the sentencing court abused its discretion; rather, if this court "clearly and convincingly" finds that (1) "the record does not support the sentencing court's findings under * * * (C)(4) of section 2929.14 * * *" or (2) "the sentence is otherwise contrary to law," then we may conclude that the court erred in sentencing. *See also State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231. In *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 39, the Ohio Supreme Court clarified that R.C. 2953.08(G)(2) "does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12."

{¶ 7} A sentence is not clearly and convincingly contrary to law "where the trial court considers the purposes and principles of sentencing under R.C. 2929.11 as well as the seriousness and recidivism factors listed in R.C. 2929.12, properly applies post-release control, and sentences a defendant within the permissible statutory range." *State v. A.H.*, 8th Dist. Cuyahoga No. 98622, 2013-Ohio-2525, ¶ 10.

{¶ 8} Pursuant to R.C. 2929.11(A), the three overriding purposes of felony sentencing are "to protect the public from future crime by the offender and others," "to punish the offender," and "to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes

without imposing an unnecessary burden on state or local government resources." Additionally, the sentence imposed shall be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B).

{¶ 9} Furthermore, in imposing a felony sentence, "the court shall consider the factors set forth in [R.C. 2929.12(B) and (C)] relating to the seriousness of the conduct [and] the factors provided in [R.C. 2929.12(D) and (E)] relating to the likelihood of the offender's recidivism * * *." R.C. 2929.12. However, this court has held that "[a]lthough the trial court must consider the principles and purposes of sentencing as well as the mitigating factors, the court is not required to use particular language or make specific findings on the record regarding its consideration of those factors." *State v. Carter*, 8th Dist. Cuyahoga No. 103279, 2016-Ohio-2725, ¶ 15.

{¶ 10} In his first assignment of error, Harris argues that the trial court "blatantly failed to take into consideration [R.C.] 2929.12" and 2929.11. Specifically, Harris argues that the court "disregarded [his] serious alcoholism and need for help, by stating that he believed [Harris] did not want help." We note that Harris does not challenge the postrelease control aspect of his sentence or whether his sentence is within the statutory range. Therefore, we need not review these issues.

{¶ 11} Our review of the record shows that the trial court considered the following at Harris's sentencing hearing relating to R.C. 2929.11 and 2929.12.

{¶ 12} Harris's presentence-investigation report indicates that "the victim suffered a fractured jaw" as a result of Harris assaulting her in front of her five-year-old child.  The record also indicates that the "victim was beaten so badly that she was unconscious until the morning * * *."  Concerning the seriousness of Harris's conduct, the court stated the following: "You know, did you just pummel her with your fists in front of her five year old, strangled her threw her down the steps?  That's enough for me."

{¶ 13} Defense counsel stated the following on the record:

My client is 38 years old.  As you know he has a 13-year-old son.  He was employed.  He has the support of his family.

He also has a serious alcohol addiction.  Which absent that underlying issue we — we are probably not here today.  We are probably — and he's probably not here on prior occasions in various courts.

{¶ 14} Defense counsel stated that Harris makes "good decisions" when he is sober, noting that Harris appeared in court knowing he was going to prison.  "And he is here today willing to accept the consequences for his actions on these various dates."  Defense counsel read letters from Harris's brother, mother, and employer, all of which showed support for Harris.  Defense counsel also noted "the remorse [Harris] feels for the injuries that he inflicted on the victim in this case."

{¶ 15} Harris stated the following on the record:

I would like to apologize to the victim * * * in this situation.  I would like to apologize to you as well * * * for you giving me an opportunity and blowing it.

And I w[ould] also like to just — I would like to say sorry for the things that I've done.

And that's — and that alcohol is a major problem with me, and — and that it definitely played a factor in a lot of everything that has gone on.

{¶ 16} The court repeatedly asked Harris why he assaulted the victim, and Harris repeatedly answered that "alcohol played a part" in the situation. According to Harris, other than the alcohol, he did not know "what was the cause" of the altercation. The court continued:

I'm just going to tell you, you want to come in here to this court, blame everything on alcohol, and I'm not buying it. I'm not buying it.

Because there's plenty of people that have alcohol and drug problems and they're not violent.

And you've been given every opportunity in the world to clean up your act.

And you've thumbed your nose at your parents, at your boss, at your girlfriend, at the former person in your life, you've assaulted her.

So for the record, because he's going to prison for a substantial period of incarceration, I want to indicate that this is the record that this individual has: He has * * * first of all, four prior [OVI] convictions. In Cuyahoga County Common Pleas Court, in Bedford, in Willoughby, in Cleveland Municipal Court.

{¶ 17} As to Harris's criminal history, the court found that when he was 21 years old, he was charged with attempted murder, four counts of felonious assault, and aggravated riot. Ultimately, Harris pled guilty to aggravated assault and was sentenced to prison. Harris was ordered to abstain from alcohol, bars, and "illegal drug usage," and he was "ordered into substance abuse counseling" multiple times. Harris was convicted of various crimes in 2008 and 2009, including drug abuse and burglary. In 2010, Harris was convicted of domestic violence. In 2012, he was convicted of trespassing, in 2013, he was convicted of trafficking in marijuana, and

in 2016, he was convicted of disorderly conduct, criminal damaging, and child endangering. Harris's criminal history continued with additional convictions in 2017, 2019, and 2020.

{¶ 18} The court noted on the record that Harris was "given every opportunity in the world to rehabilitate" himself, but his "crimes are becoming even more violent." The court stated that Harris had a "careless disregard, some would say ruthless indifference to the safety of the people in the community."

{¶ 19} In the court's journal entry memorializing Harris's felony sentence, the court stated that it "considered all required factors of the law."

{¶ 20} As noted previously in this opinion, the R.C. 2929.11 and 2929.12 factors that a court must consider when imposing a felony sentence include the purposes and principles of sentencing, the seriousness of the offender's conduct, and the likelihood of recidivism. This court has held that "consideration of the factors is presumed unless the defendant affirmatively shows otherwise." *State v. Phillips*, 8th Dist. Cuyahoga No. 110148, 2021-Ohio-2772, ¶ 8.

{¶ 21} Given Harris's extensive criminal history, most notably his six OVI convictions, and the harm he caused the assault victim, we find that he failed to overcome the presumption that the trial court considered the appropriate statutory factors when imposing an aggregate prison sentence of five-to-six years.

{¶ 22} Accordingly, Harris's first assignment of error is overruled.

## III. Impartiality of Trial Court

{¶ 23} In his second assignment of error, Harris argues that his "constitutional rights * * * were violated when the Trial Court made it known that he doesn't like people like" him. "It was obvious that [Harris's prison sentence was] not based on the cold impartiality of justice, rather the personal disgust the Trial Court held for" him.

{¶ 24} This court has held that "it is incumbent upon the judiciary to remain detached and neutral in any proceeding before it. * * * When determining whether or not a trial judge's comments were appropriate, a reviewing court must decide whether the remarks were prejudicial to a defendant's right to a fair" proceeding. *State v. Blazer*, 8th Dist. Cuyahoga No. 93980, 2010-Ohio-6367, ¶ 49. "A judge is presumed to be unbiased and unprejudiced over the matters in which she or he presides." *State v. Bonnell*, 8th Dist. Cuyahoga No. 91785, 2009-Ohio-2721, ¶ 12.

{¶ 25} The court stated the following on the record at Harris's January 31, 2023 plea hearing, after Harris entered his guilty plea. We include what some may consider an unusually lengthy portion of the transcript. Under the circumstances of the present case, we find that the trial court's words best speak for themselves.

> THE COURT: Okay. You've got five [OVIs]. You just pled guilty to your fifth [OVI]. What does that tell you about you?
>
> HARRIS: I need some help in that area.
>
> THE COURT: No. Look, help's been available. Help is available. People told you you need help for years, you just won't do it.
>
> HARRIS: I need to apply myself better.

* * *

THE COURT: You're engaged in this self-destructive behavior that results in you having to go to prison over a relationship for what you did. Five [OVIs], you're still drinking. Most reasonable people would say, You know what, I got some problems, I've got some behavioral issues, I got conviction, but not you. Not you. You understand that I can revoke your bond and incarcerate you right now?

HARRIS: Yes, I do.

THE COURT: I could also say, Okay, you have now violated your bond and I can sentence you to a state penal institution on the F2 for 8 years right now, which could become 12 years. I could do that right now. That's the awesome power I have. And you, forgive me, are screwing with society. It's my job to uphold the peace and dignity of the State of Ohio, and you're out there just on a terror, just won't give it up. Okay? And you're talking to a guy who has presided over one tragedy after another where thoughtless, reckless people like you get behind the wheel of a car and kill somebody over and over and over again, and I've had to deal with grieving families because of guys like you. Did you drive to court today?

HARRIS: No, my dad, he brought me.

THE COURT: Is your dad here?

HARRIS: Yes.

THE COURT: Has your dad told you to deal with your alcohol and drug problems over the years? Look at your father. Did he tell you over the years? Your father's shaking his head yes. Right, father?

[FATHER]: Yes, sir.

* * *

THE COURT: Were you drinking [on the night of the burglary and attempted felonious assault]?

HARRIS: Was I drinking that night? No.

THE COURT: You know, it's so interesting, just looking at you and listening to your hesitation to a simple question demonstrates to me all I need to know. Was I drinking? Um, you mean that night?

HARRIS: No, I —

THE COURT: No, no, no, don't interrupt me. I want to impersonate you. Was I drinking? Oh, you mean that night? Oh, well, it was like this, we was — were you drinking or not the night that you nearly killed the woman?

HARRIS: No.

THE COURT: No? So you were stone-cold sober and you made the decision to go over and physically assault her? Now you want to change the answer to the question, don't you?

HARRIS: No, no, I don't want to change my answer, because I didn't go over there intoxicated. That's what you asked me.

THE COURT: Okay, you're being clever now. You're being real clever, because that wasn't my question. You've already denied you used alcohol.

HARRIS: Yes. I'm just trying —

THE COURT: Okay, just a minute, don't interrupt me. So my question was, You went over there sober, and being of sober mind and sound judgment, you went over there and assaulted this woman where she had to spend a week in the hospital? Is that what you're telling me?

HARRIS: Yes.

THE COURT: You weren't drunk? Do you want to tell me that you were using drugs? What explains that behavior? Why would a sober person do that? Okay, see, you caught yourself in a lie. You shouldn't have done that. You're still drinking, why? You haven't gone to CA/NA/AA?

HARRIS: Yes, I go to AA meetings. Actually, my dad, he's a sponsor and so he —

THE COURT: He's a sponsor, he's in AA?

HARRIS: Yes.

THE COURT: And he can't — and again, this is not about him influencing you, because your behavior is not just about drinking.

HARRIS:  It's just been an —

THE COURT:  Don't interrupt me.

HARRIS:  Sorry.

THE COURT:  Your behavior is not about drinking, because you just told me that when you assaulted that woman you were stone-cold sober.  So you're just an angry or evil guy, or whatever.  It ain't about drinking because you told me it didn't happen when you were drinking.  You can't blame it on the drink.  We don't care about the AA, it's beyond that.  You got a problem, because I don't like violent offenders who abuse people like you have.  And additionally, there's testimony from the victim in the case that you've assaulted her in the past.

And as far at the victim is concerned, has he assaulted you in the past when he's been intoxicated?

[THE VICTIM]:  Every single time.

THE COURT:  And this latest event he was intoxicated?

[THE VICTIM]:  Very.

THE COURT:  And he lied to the Court, therefore?

[THE VICTIM]:  Yes, he did.

THE COURT:  And he caught himself in a lie, because it would have been actually better for you to be drunk and go over, but no, no, you're sober now, and you went over there stone-cold sober and assaulted her.  So now, as a result of your behavior and the State's motion to revoke your bond, I'm going to place you under house arrest without any exceptions whatsoever.  You're going to be remanded to the county jail, you're going to stay there until you get an ankle bracelet on.

HARRIS:  I have an ankle bracelet on.

THE COURT:  Okay.  Then you are remanded to your house, no work release privileges, no — you're at home.  And the next time I talk to you, you better demonstrate that my little conversation with you here today has changed your attitude and that you have a new consciousness, because you could be facing murder charges right now.  This woman was knocked unconscious, if I'm not mistaken; is that correct?

[THE VICTIM]:  That's correct.

{¶ 26} The court then had a brief conversation on the record with the victim, which established that the victim's five-year-old son witnessed Harris assaulting his mother.  The court continued:

THE COURT:  I wonder what impact that's going to have on [the victim's son's] life going forward, but you don't care.  Also, you're required to report weekly.  No alcohol, no drugs, no pot if you don't have a medical marijuana card.  If you test positive even one more time, you not only will be incarcerated in the Cuyahoga County jail, but I'll immediately go forward with sentencing and you can look forward to doing the maximum period of incarceration.

Your behavior is destructive to the peace and dignity of the State of Ohio.  It's my job to be a hero for those that live in this society, okay, to uphold the standard, so that people aren't attacked in their own home.  Five [OVIs], that tells me so much about you.  You don't care a thing about anybody else, you just care about yourself.  So I think I've probably been loud and clear, you better do the right thing going forward.  It would be great if you listen to your father's advice.

* * *

THE COURT:  Do you have children?

HARRIS:  Yes.

THE COURT:  How many?

HARRIS:  One.

THE COURT:  How old?

HARRIS:  My son will be 13 this year.

THE COURT:  Okay.  I presume he's in the custody of his mother?

HARRIS:  I mean, we coparent, but we go back and forth, but he lives with his mom, yes.

THE COURT:  I hope he lives with his mother the majority of his time, because you got issues.  You exposed a [five]-year-old to a terrible

night. I've handled it, he's on house arrest. Go home, stay there, don't go anywhere. I'm not even going to give you permission to go to AA/CA/NA, because I know you'd just use it as a joke. So you're grounded, you'll be at home. If you violate the terms and conditions of your court-supervised release, I'm going to immediately incarcerate you. Thank you very much.

{¶ 27} While we do not condone the trial judge's harsh, sanctimonious, and at times misguided comments, we cannot say that these remarks prejudiced Harris.[1] Harris is not challenging his guilty plea in this direct appeal, and our review of his first assignment of error resulted in our finding that his prison sentence was not clearly and convincingly contrary to law. In fact, the court sentenced Harris to less than the maximum prison term. One of the offenses to which Harris pled guilty was a second-degree felony, which is punishable by a prison term of up to eight years. R.C. 2929.14(A)(2). Harris was sentenced to two-to-three years in prison for this second-degree felony. Therefore, we cannot say that the trial court "acted from personal animosity when imposing [Harris's] sentence." *Bonnell*, 8th Dist. Cuyahoga No. 91785, 2009-Ohio-2721, at ¶ 21.

{¶ 28} Accordingly, Harris's second assignment of error is overruled.

## IV. Constitutionality of Reagan Tokes Law

{¶ 29} In his third and final assignment of error, Harris argues that the Reagan Tokes Law, which applies to prison sentences imposed for various felony offenses, is unconstitutional under the Sixth Amendment right to trial by jury, the separation-of-powers doctrine, and the due process clause of the Fourteenth

---

[1] We are mindful of the Ohio Supreme Court's recent opinion in *Disciplinary Counsel v. Gaul*, Slip Opinion No. 2023-Ohio-4751.

Amendment. Pursuant to the Ohio Supreme Court's holding in *State v. Hacker*, which addressed and rejected all three of these arguments, this assignment of error is overruled. *State v. Hacker*, Slip Opinion No. 2023-Ohio-2535, ¶ 40 (holding that the Reagan Tokes Law "is not facially unconstitutional" as it relates to separation of powers, trial by jury, and due process rights).

{¶ 30} Accordingly, Harris's third assignment of error is overruled.

{¶ 31} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LISA B. FORBES, JUDGE

FRANK DANIEL CELEBREZZE, III, P.J., and
MICHAEL JOHN RYAN, J., CONCUR