[Cite as *State v. Bastawros*, 2024-Ohio-2809.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,         :

    v.                          :          No. 113348

MARCUS BASTAWROS,               :

    Defendant-Appellant.        :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 25, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-679653-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Andrea Isabella, Assistant Prosecuting Attorney, *for appellee.*

Mary Catherine Corrigan, *for appellant.*

SEAN C. GALLAGHER, J.:

{¶ 1} Marcus Bastawros appeals his guilty plea to attempted drug possession, a fourth-degree felony offense, and the resulting one-year term of community-control sanctions. He claims that the trial court demonstrated bias against him during the pretrial proceeding and imposed an illegal condition of the

community-control sanctions imposed on his offense by ordering the sale of real property he owned.  For the following reasons, we affirm.

{¶ 2}  Around midnight on March 2, 2022, a search warrant was executed at 11218 Fortune Avenue, located in Cleveland, Ohio.  Bastawros owned the property, which he received through an inheritance eight years earlier.  The house is in a severe state of disrepair and was littered with debris, syringes, and excrement to the extent that police officers deemed it too dangerous to permit the use of canines during the search.  There were no utilities in service.  Despite this, several "tenants" were living in the attic.  Bastawros claimed to have executed a lease agreement with them.  Bastawros was unable to present a lease agreement to substantiate his claim.

{¶ 3}  A search of the residence revealed an unknown quantity of various controlled substances.  Fifteen people present at the time of the search were detained, and six of them were arrested, including Bastawros who was at the house at the time.  The search was the culmination of a four-month-long investigation that stemmed from the discovery of a stolen vehicle parked at the house in November 2021.  That vehicle left the house and was stopped by police officers, who detained Angela Sears.  In January 2022, Sears was found dead in the Fortune Avenue house.  Her death was attributed to an overdose.  The investigation intensified.  The day before the search warrant was executed, additional evidence of the ongoing illegal activity was discovered, prompting the search warrant.  Bastawros was charged with one count of third-degree felony trafficking, two counts of fifth-degree felony drug

possession, and one count of fifth-degree felony possession of criminal tools (various items typically used for drug trafficking).

{¶ 4} After arraignment, Bastawros was released on a personal bond with the condition that he be placed under court-supervised release. He failed to comply with the terms of that release.[1] At a scheduled bond hearing on the violation, Bastawros initially told the court that although he had a history of drug abuse, he had been sober since 2018 and could be tested that day. Following a short break during which the court intended to have Bastawros screened, Bastawros returned with his counsel and admitted to recent drug use. He indicated that he would likely test positive for marijuana and methamphetamine. Citing his untruthfulness, the trial court revoked the bond, ordered the bond forfeited, and remanded Bastawros to the county jail for the duration of the pretrial proceedings. During that hearing, after being led to believe that Bastawros had recently obtained a Masters in Business Administration that turned out to have been earned in 2002, the trial court was told that Bastawros was a licensed certified public accountant set to start work at a firm a couple of months after the bond hearing. Upon receiving that information, the court questioned Bastawros's choice of apparel. He appeared at the hearing wearing a "Hollister t-shirt." Bastawros, in response, indicated that he was unaware that the

---

[1] This is a reoccurring theme. Bastawros has failed to comply with the terms of his community-control sanctions at the time of this appeal. We note that the trial court has issued a capias based on Bastawros's failure to report to the probation department, which occurred roughly two weeks after the current appeal was filed.

court appearance was for the violation hearing. He anticipated just meeting with his counsel.

{¶ 5} A motion to suppress the evidence obtained through the execution of the search warrant was filed in which Bastawros claimed that the warrant was not signed and, in the alternative, that the affidavit in support of the warrant was stale because the investigation took four months, despite culminating with evidence of illegal activity occurring in the house the day before the warrant was executed. Shortly before the hearing, Bastawros retracted the argument regarding the unsigned warrant. The warrant was indeed signed before the search was executed.

{¶ 6} At the beginning of the hearing, the court asked for clarification as to the basis of the motion to suppress, questioning whether Bastawros wanted to proceed on the sole remaining argument in light of the State's plea offer dismissing all but one count amended to a fifth-degree felony, which would have resulted in Bastawros's immediate release from pretrial confinement. Tr. 19:1-3. After conferring with counsel, Bastawros, claimed that the motion to suppress should be heard on the remaining issue because the affidavit contained some information that was stale, although it was conceded that there was relevant, recent information throughout the remainder of the averments. According to Bastawros, the warrant was invalid because it contained information describing the activity that initially prompted the police investigation over the four-month span. *But see State v. Morales*, 2018-Ohio-3687, ¶ 21 (10th Dist.) ("An affidavit supporting a search warrant which, viewed in its totality, indicates investigation into an ongoing

criminal operation, such as drug trafficking, may support the issuance of a search warrant even where the information provided in the affidavit is not recent."), citing *United States v. Ortiz*, 143 F.3d 728, 733 (2d Cir. 1998), and *United States v. Martino*, 664 F.2d 860, 867 (2d Cir. 1981); *United States v. Tucker*, 638 F.2d 1292, 1299 (5th Cir. 1981) ("primary consideration in evaluating the staleness issue is whether the affidavit describes a single transaction or a continuing pattern of criminal conduct"). The trial court expressly asked whether there was any authority supporting the proposition that the search warrant was invalid even if it were presumed to have contained some arguably stale information. Bastawros, through counsel, responded that there was but did not offer any specific cases.

{¶ 7} After reviewing the information contained in the four corners of the affidavit, including the information regarding the averments pertaining to activity discovered the day before the search warrant was executed, the court denied the motion to suppress. Although not expressly referencing it, the trial court's decision was supported by the weight of authority throughout Ohio. *See, e.g., State v. Young*, 37 Ohio St.3d 249, 257 (1988) (three-month-old information was not considered stale for the purposes of validating the search warranted issued); *State v. Milancuk*, 2020-Ohio-1607, ¶ 21 (8th Dist.) (concluding that the defendant's staleness argument was contrary to established precedent from around the country establishing that ongoing criminal activity justifies probable-cause determinations

even if some of the information in the affidavit is several months old).[2]  After the trial court denied the motion to suppress, Bastawros's counsel asked to be heard on two additional matters.  The trial court denied the request citing the court's busy schedule and noting that "you have wasted enough of [the court's] time this morning." Tr. 26:10-12.

{¶ 8}  On the morning of trial, the State offered another plea deal in which it agreed to dismiss all but Count 1, then amended to attempted drug possession as a fourth-degree felony.  Bastawros pleaded guilty following a thorough colloquy.  At the sentencing hearing, Bastawros attempted to downplay his involvement in the drug activity, claiming that he was only present during the midnight search because he was there to clean up the property, which lacked power at the time, to remedy the five different housing-code violations issued against him in separate proceedings. Tr. 38:17-25.  In response to Bastawros's allocution, the court stated that "you continue to be a Defendant that I don't trust or particularly like." Tr. 40:3-8.  The trial court sentenced Bastawros to serve a one-year term of community-control

---

[2] *See also State v. Jones*, 2020-Ohio-6667, ¶ 23 (3d Dist.) (concluding that even if the history of the years-long investigation, which was included in the affidavit supporting the warrant, could be deemed stale, a review of the entire affidavit demonstrates a continuing course of drug-trafficking activity justifying the issuance of the warrant); *State v. Taylor*, 2023 Ohio App. LEXIS 4007 (5th Dist. Nov. 17, 2023) (14-month investigation into drug activity did not render warrant invalid in consideration of the totality of the investigation, which culminated with a drug buy the day before executing the warrant); *State v. Shary*, 2021-Ohio-3604, ¶ 33 (8th Dist.) (even if the affidavit in support of the warrant contains improper information, the warrant is nonetheless valid if the remainder of the averments establish the requisite probable cause); *State v. Prater*, 2002-Ohio-4487, ¶ 10-14 (12th Dist.) (six months transpiring between last drug transactions and the execution of the warrant not deemed to be stale information).

sanctions, which included a condition to sell the Fortune Avenue house after Bastawros indicated he would do so if he was released from jail.

{¶ 9} In this appeal, Bastawros advanced two assignments of error. He first claims that the "trial court was neither neutral nor impartial" and the proceeding was "riddled with horrific bias and prejudice." That alleged partiality or bias, according to Bastawros, led to the illegal condition of requiring the sale of Bastawros's house as a condition of the one-year term of community-control sanctions. In the second assignment of error, Bastawros claims that the condition included in the community-control sanctions to sell the property is contrary to law because, according to Bastawros, the sale of the home is not reasonably related to rehabilitation because his arrest in the house, which contained illegal drugs and was in such a severe state of dilapidation that several housing code violations had been assessed, occurred 18 months before the sentencing and, therefore, was too attenuated to remain an ongoing concern. He further argues that because he pleaded guilty to attempted drug possession, there is no evidence of illegal activity occurring inside the building. Those arguments will be addressed in reverse order.

{¶ 10} When reviewing specific conditions of community-control sanctions, courts generally consider "whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to the conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation" in determining whether the imposed sanction is permitted. *State v. Mahon*, 2018-

Ohio-295, ¶ 8 (8th Dist.), quoting *State v. Talty*, 2004-Ohio-4888, ¶ 12, and *State v. Jones*, 49 Ohio St.3d 51, 53 (1990). The question in this appeal is whether the trial court abused its discretion by including the sale of the home as a condition of the one-year community-control sanction. *Id.* at ¶ 6, citing *State v. Cooper*, 2016-Ohio-8048, ¶ 31 (8th Dist.), and *Talty*.

{¶ 11} During sentencing, Bastawros indicated that his arrest occurred when he was present at the house and had access to the seized contraband discovered within the building. Tr. 36:10-14. In addition, he acknowledged that the multiple housing-court violations he had received on the dilapidated property were "a drain on the community" and himself and that, "should he be released" from the pretrial confinement, he intended to sell the property to relieve himself of the burden. *Id.* The trial court, in imposing the one year of community-control sanctions, credited Bastawros for the time served in pretrial confinement and ordered his release from jail under the community-control supervision with the additional condition that he sell the dilapidated property prone to being used for illegal purposes.

{¶ 12} Bastawros claims that the sale of the home as a condition of the community-control sanctions is contrary to law because that "cannot possibly relate to the goals of community control" because (1) the search of the home occurred 18 months before the sentencing and was too attenuated in time to have a reasonable relationship to the sentencing; (2) his crime was only for attempted drug possession based on the plea deal; and (3) the sanction is not related to future criminality.

{¶ 13} Bastawros's reliance on *Mahon*, 2018-Ohio-295 (8th Dist.), to demonstrate reversible error, the only authority cited in support of his argument, is misplaced. *Mahon* involved a defendant convicted of unlawful use of a telecommunications device. That defendant, who was then employed by the Cleveland Clerk of Court, used his position in the Clerk's office to surreptitiously remove court costs imposed on a traffic offense for which he had been convicted. *Id.* at ¶ 2. As part of the community-control sanctions imposed as the final sentence, the defendant was placed on house arrest, monitored through GPS, and was precluded from consuming alcohol and drugs or attending any place or function where alcohol or drugs were sold, used, or served. *Id.* at ¶ 11. Upon review, *Mahon* concluded that those conditions of the community-control sanctions imposed were invalid because they did not bear any relationship to the nonviolent offense nor were there any allegations that the defendant had a history of alcohol or drug abuse. *Id.* *Mahon* has no bearing on the facts of this case.

{¶ 14} The dilapidated property ordered to be sold was at the heart of the charges brought against Bastawros and was not vague or overbroad. *See, e.g., Cooper*, 2016-Ohio-8048, at ¶ 35 (8th Dist.) (community-control condition of defendant paying to maintain and clean up hazardous material pending the sale of the property was related to the criminal conduct). His criminal conduct was enabled by his continued ownership of the house and because of his permitting drug trafficking to occur within it by what he claimed were his tenants. We cannot conclude that the sale of the property in this case was wholly unrelated to past and

future criminal conduct or efforts for rehabilitation. *See, e.g., State v. Adams*, 2013-Ohio-1603, ¶ 69 (11th Dist.) (forfeiture of the defendant's real property was justified in light of the ongoing drug activity that occurred on the property). In light of the undisputed connection between the property and Bastawros's continued use of illegal drugs during the pretrial proceedings, the unmitigated drug-trafficking activity that took place inside the house for an extended period of time, and Bastawros's suggestion that he would sell the property if released from confinement with time-served, it cannot be concluded that the trial court abused its discretion by imposing the sale of the property as a condition of the community-control sanctions regardless of the passage of time between his arrest and the sentencing.

{¶ 15} The second assignment of error is overruled.[3] Ordering the sale of Bastawros's dilapidated drug house as a condition of the community-control sanctions has not been demonstrated to be an abuse of discretion.

{¶ 16} In the first assignment of error, Bastawros claims the trial judge was biased against him, and therefore, the conviction should be vacated.

{¶ 17} "[W]hen a defendant wishes to raise a challenge to a trial judge's objectivity, he must utilize the procedure for filing an affidavit of disqualification set forth in R.C. 2701.03." *State v. Frazier*, 2017-Ohio-8307, ¶ 16 (8th Dist.), citing *State v. Casada*, 2016-Ohio-2633, ¶ 25 (8th Dist.), and *State ex rel. Pratt v.*

---

[3] Bastawros included a statement in his second assignment of error that he also "believes that this sanction was violative of the Fifth Amendment takings clause [sic]." No analysis or authority was provided to support that claim. *See* App.R. 16(A)(7). We must refrain from providing arguments on behalf of a party. *See State v. Quarterman*, 2014-Ohio-4034, ¶ 19. Accordingly, that argument is overruled.

*Weygandt*, 164 Ohio St. 463 (1956), paragraph three of the syllabus. In general, appellate courts have "'no authority to determine a claim that a trial judge is biased or prejudiced against a defendant and no authority to void a trial court's judgment based on a claim that the trial judge is biased or prejudiced.'" *Id.*, quoting *State v. Williamson*, 2016-Ohio-7053, ¶ 27 (8th Dist.).

{¶ 18} In *State v. Dean*, 2015-Ohio-4347, ¶ 223, for example, the defendant appealed his sentence claiming the trial judge impermissibly predetermined that the sentence of death would be imposed and that bias required a new sentencing hearing. *Id.* at ¶ 222. According to the Ohio Supreme Court, however, the failure to timely and properly raise allegations of bias within the R.C. 2701.03 framework precludes the defendant from bringing the complaints for the first time in a direct appeal. *Id.*, citing *State v. Osie*, 2014-Ohio-2966, ¶ 65, and *State v. Moore*, 93 Ohio St.3d 649, 650 (2001). Thus, it generally stands that "an appellant who fail[s] to file an affidavit of disqualification [can] not complain on appeal that the judges on the court below were biased." *Osie* at ¶ 64; *but see State v. Hunt (In re Thomakos)*, 2020-Ohio-6874, ¶ 4 ("[a]lleged due-process violations, however, may be addressed on appeal" when the due-process claims arise from the allegations of judicial bias), citing *State v. Jackson*, 2016-Ohio-5488, ¶ 43, and *State v. Dean*, 2010-Ohio-5070, ¶ 2.

{¶ 19} Notwithstanding, the Ohio Supreme Court has also concluded that some allegations of bias can be reviewed by appellate courts. As the court has observed, "'a criminal trial before a biased judge is fundamentally unfair and denies

a defendant due process of law.'" *Dean*, 2010-Ohio-5070, at ¶ 48, quoting *State v. LaMar*, 2002-Ohio-2128, ¶ 34, and *Rose v. Clark*, 478 U.S. 570 (1986). The defendant's burden presenting this argument is steep. "'[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.'" *Id.* at ¶ 49, quoting *Liteky v. United States*, 510 U.S. 540 (1994). Importantly, "'judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.'" *Id.*, quoting *Liteky*. Typically, an offender must demonstrate the bias through linking the impermissible commentary to the decisions rendered at trial. *Id.* at ¶ 52. If the offender demonstrates that "the trial was infected with judicial bias, the remedy is a new trial." *State v. Hough*, 2013-Ohio-1543, ¶ 10 (8th Dist.), citing *Dean,* 2010-Ohio-5070, at ¶ 2; *but see Fisher v. Fisher*, 2011-Ohio-5251, ¶ 43 (8th Dist.), citing *Baker v. Ohio Dept. of Rehab. & Corr.*, 2001-Ohio-2553 (4th Dist.), and *Beer v. Griffith*, 54 Ohio St.2d 440, 441-442 (1978) ("Since only the Chief Justice or [their] designee may hear disqualification matters, [courts of appeals are] without authority to pass upon disqualification or to void the judgment of the trial court upon that basis.").

{¶ 20} Bastawros identifies three separate comments supporting his claims of the alleged bias: (1) the trial court commented on Bastawros's unprofessional attire when attending a hearing after being told of Bastawros's alleged profession;

(2) the trial court's characterization of the motion to suppress being a "waste of time" after conducting a hearing on a limited argument that was not supported with relevant authority; and (3) the court's statement at sentencing that Bastawros is "a Defendant that I don't trust or particularly like" before imposing the one-year term of community-control sanctions. Despite two of those instances occurring during the pretrial proceeding, a time that Bastawros could have invoked R.C. 2701.03 by filing an affidavit of disqualification with the Ohio Supreme Court, no such filing occurred.

{¶ 21} This panel lacks authority to pass judgment on the questions of judicial ethics or to conclude that the proceedings are invalid based on the allegations of bias. *Osie*, 2014-Ohio-2966, at ¶ 64; *see also In re Estate of Wearn*, 2023-Ohio-3152, ¶ 15 (8th Dist.) (appellate courts lack jurisdiction to reverse a trial court's adjudication based on allegations of bias or violations of the Code of Judicial Conduct); *but see State v. Harris*, 2024-Ohio-246, ¶ 27 (8th Dist.) (concluding that the trial judge's comments were "harsh, sanctimonious, and at times misguided," but the defendant failed to demonstrate prejudice). And, more important, Bastawros has not demonstrated, let alone argued, that *Dean*, 2010-Ohio-5070, at ¶ 8, is applicable to his claims. *See Wearn* at ¶ 20-22 (appellate courts are not permitted to advocate on behalf of parties when considering arguments that were not supported by citations to authority and analysis). Bastawros failed to file an affidavit of disqualification under R.C. 2701.03, and therefore, he cannot complain that the trial judge was biased as a basis to invalidate his conviction. *Osie* at ¶ 64.

{¶ 22} Beyond that, although the trial judge voiced his conclusion with respect to Bastawros's credibility in allocution after Bastawros blatantly attempted to downplay his responsibility for being present when the search warrant was executed, there is no indication that the court's statements impacted Bastawros's due process rights, much less is it outside the purview of the trial judge to render credibility determinations with respect to sentencing. The record amply demonstrates that the trial court intended to give Bastawros a lenient sentence notwithstanding his demonstrated propensity for untruthfulness and unwillingness to take responsibility for his criminal behavior. Even if we disregarded the procedural defect of Bastawros's failing to invoke R.C. 2701.03, it cannot be concluded that the identified, but isolated comments deprived him of a fair proceeding in which he pleaded guilty to a minimal charge and received an extremely deferential sentence — the one-year term of community-control sanctions. The first assignment of error is overruled.

{¶ 23} Bastawros's conviction and final sentence are affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

MARY EILEEN KILBANE, P.J., and
ANITA LASTER MAYS, J., CONCUR