[Cite as *Cleveland v. McCoy*, 2023-Ohio-3792.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| CITY OF CLEVELAND, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 112287 |
| LONNIE MCCOY, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** October 19, 2023

Criminal Appeal from the Cleveland Municipal Court
Case No. 2022CRB003513

### *Appearances:*

Mark Griffin, Cleveland Director of Law, Aqueelah Jordan, Chief Prosecutor, and Matthew Bezbatchenko, Assistant City Prosecutor, *for appellee.*

Jones Day and Joseph Shell, *for appellant.*

KATHLEEN ANN KEOUGH, P.J.:

{¶ 1} Defendant-appellant, Lonnie McCoy, appeals his conviction for aggravated menacing. For the reasons that follow, this court reverses his conviction and remands the matter for a new trial.

{¶ 2} On May 11, 2022, the city charged McCoy in a single-count complaint with aggravated menacing, a first-degree misdemeanor violation of Cleveland Codified Ordinances ("C.C.O.") 621.06. On November 29, 2022, following multiple continuances, the matter proceeded to a bench trial where the court heard the following testimony from both the victim and McCoy.

{¶ 3} The victim, age 73, testified that he and McCoy were neighbors. He stated that he had lived in the apartment building for 14 years prior to McCoy moving into the back, downstairs apartment. The victim stated that he and McCoy initially engaged in small talk, but any cordiality ceased after he told McCoy to stop knocking on people's doors and being loud. According to the victim, McCoy turned hostile, and would scream at 2:30 a.m. with "little threats," i.e. stating "you don't know who you're messing with," "people can lose things, "you don't know who you're meddling with," and "[the victim] is a crackhead." (Tr. 10.) The victim testified that this occurred for approximately 10-11 months even though he had called the police multiple times. He stated that he obtained a protection order against McCoy because the "threats were getting outrageous." (Tr. 12.) Over objection, the city introduced the protection order that the victim obtained against McCoy in June 2022. The order revealed that victim obtained an *ex parte* protection order on May 5, 2022 — five days before the incident giving rise to the complaint.

{¶ 4} The victim stated that on May 10, 2022, he returned from the store and parked in the back of the house. The victim testified that McCoy was standing inside his doorway "as usual and peeking out of the screen door." The victim stated

that he saw McCoy waving a gun across his body — "he was waving it across — just to show me — intimidate me." (Tr. 17.) He described the gun as having a brown handle. He admitted, however, that McCoy did not say anything to him at that time, but that McCoy started yelling once both men were inside each other's respective homes. He testified,

> As I said, I don't know who I'm messing with. He's the type of person he's patient. He don't worry about it. He patient. You "B" this. You "B" that. You know, you coward this. You coward. He's patient, and he's gone handle it even though he got to move. He'll come back here. Then you'll lose things you got.

(Tr. 18.) According to the victim, McCoy made these statements while using a karaoke machine to ensure that both he and the landlord heard them. The victim testified that he "felt like my life was in danger cause he was going too far." (Tr. 18.) As result, he called the police non-emergency telephone number and made a complaint. As a result, the police responded and arrested McCoy.

{¶ 5} On cross-examination, the victim admitted that McCoy never pointed a gun at him and never opened the door or approached him. The defense played a recording of the victim's call to the police in which the victim told police that the gun was in the McCoy's "waist[band]." The victim clarified that it was in McCoy's waistband, but that he pulled it out and waved it across his body.

{¶ 6} The victim admitted further that he had called the police multiple times before to complain about McCoy, but that the police would only issue McCoy warnings. He also admitted that McCoy had previously called the police on him. The victim denied, however, that he wanted McCoy evicted. In fact, he stated that

he did not care if McCoy stayed in the house because he had a protection order because McCoy "kept threatening his life." (Tr. 32.) Following the admission of the city's exhibit, the city rested its case.

{¶ 7} McCoy, a 68-year-old veteran, testified in his own defense contending that the victim wanted him evicted because he is a convicted felon who does not have any rights and because "I don't count." (Tr. 47.) He stated that both the victim and the landlord constantly disrespected him. He emphatically denied that he made any threats toward the victim or that he brandished a gun, acknowledging that as a convicted felon, he "can't have one." (Tr. 45.) McCoy stated that the police never recovered any firearm whenever they responded to his home after the victim would call them to complain and that the police did not discover a firearm when they arrested him. He stated that he still possessed his veteran housing voucher, which he found significant because it would have been revoked if there had been any allegations of violence or being disrespectful. McCoy admitted that he had called the police on the victim before for harassment.

{¶ 8} Following organized questioning by his counsel, McCoy engaged in a speech discussing his thoughts about the criminal process, the purpose of the prosecutor, and the role of the judge. (Tr. 52.) On recross-examination, the prosecutor asked McCoy whether he attended the June 2022 TPO hearing. McCoy stated that he did not.

{¶ 9} Following McCoy's testimony, the court asked defense counsel "Anything else? I mean, any more witnesses?" Counsel responded "No, your

honor." (Tr. 60.) The transcript reveals that following this answer, neither the prosecutor nor McCoy's defense counsel made any further statements regarding this case.

{¶ 10} Thereafter, the court engaged in a lengthy conversation with McCoy about the testimony and facts of the case. The court told McCoy that this case arose not because he was a felon, but because "it's more your attitude and your personality and how you act around people." (Tr. 62.)

{¶ 11} The trial court stated:

It's because you do too much. You don't need to be knocking on doors. You don't need to be playing your music too loud. You don't need to be doing all of that. It's a lot of stuff you don't need to be doing, and so that's why people are looking at you. Nobody would even know that you're a convicted felon unless you tell them, but you doing too much. You're obnoxious. You're being a jerk, and that's why they looking at you. That's why they say this guy can't stay here. He does not know how to get along with the residents. He's doing too much. He's just — he's annoying. He's obnoxious and all that. That's why they don't want you in there.

(Tr. 63.)

{¶ 12} The conversation continued in a back-and-forth manner until McCoy interjected stating that he did not have a pistol. The court responded,

It didn't have to be a pistol. You made him scared, and that's what it was, so whatever it was, I don't care if it was a hammer. Whatever it was, it looked like a gun to him. You had something. * * * You wanted him to see it, and I believe it. * * * I'm not saying it was a gun. He saw something. * * * You wanted him to see it.

(Tr. 65-66.)

{¶ 13} The exchange between the court and McCoy ended with the court finding McCoy guilty and immediately imposing a sentence.

I don't need you to say anything else. It's trial had. It's found guilty. You need to know — you need to act right. * * * It's $1,000. 180 days. Sentence its suspended. It's one-year active probation. Leave him alone. Leave everybody alone. You don't know how to conduct yourself.

(Tr. 66.)

{¶ 14} Following the verdict and sentence, McCoy again stated that he did not have a pistol. The court responded,

Did I say you had a pistol? I said you had something that gave him the idea that you were going to do him harm. They don't have to prove that it was a gun. That's beside the point. That is not an element that you had — to prove that you had a gun.

(Tr. 67.) Again, neither the prosecutor nor defense counsel made any further statements about the evidence presented or made any statements in support or in mitigation of sentence.

{¶ 15} McCoy now appeals, raising four assignments of error.

## I. The Appeal

### A. Sufficiency of the Evidence

{¶ 16} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Cottingham*, 8th Dist. Cuyahoga No. 109100, 2020-Ohio-4220, ¶ 32. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The relevant inquiry is whether, after viewing the evidence in a light most

favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.*

{¶ 17} McCoy contends in his first assignment of error that the city presented insufficient evidence that the victim believed that he would cause the victim serious physical harm.

{¶ 18} The city charged McCoy with aggravated menacing under C.C.O. 621.06(a), which provides that "[n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of such other person or member of his or her immediate family." C.C.O 601.01(e) defines "serious physical harm" to include:

> (1) any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment; (2) any physical harm that carries a substantial risk of death; (3) any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity; (4) any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement; [or] (5) any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

Serious physical harm to property is defined as any physical harm to property that either, "(1) results in substantial loss to the value of the property or requires a substantial amount of time, effort, or money to repair or replace; [or] (2) temporarily prevents the use or enjoyment of the property or substantially interferes with its use or enjoyment for an extended period of time." C.C.O. 601.01(f).

{¶ 19} Under C.C.O. 601.07(b), "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

{¶ 20} "In order to convict [a defendant] of aggravated menacing, the city was required to present evidence of the victim's subjective belief of [his] fear of serious physical harm." *Cleveland v. Ruiz*, 8th Dist. Cuyahoga No. 106743, 2018-Ohio-4604, ¶ 7; *see also In re Amos*, 3d Dist. Crawford No. 3-04-07, 2004-Ohio-7037, ¶ 21-23; *In re Fugate*, 10th Dist. Franklin No. 01AP-1195, 2002-Ohio-2771. It is not an element of the offense of aggravated menacing that the offender either intends to carry out his threat or that he is even able to carry it out. *State v. Perkins*, 8th Dist. Cuyahoga No. 86685, 2006-Ohio-3678, ¶ 14, citing *Dayton v. Dunnigan*, 103 Ohio App.3d 67, 71, 658 N.E.2d 806 (2d Dist.1995). In fact, even a conditional threat can constitute a violation of the menacing laws. *Perkins* at *id.*; citing *State v. Collie*, 108 Ohio App.3d 580, 582, 671 N.E.2d 338 (1st Dist.1996); *see also State v. Padgett*, 2d Dist. Montgomery No. 19590, 2003-Ohio-6242, ¶ 84.

{¶ 21} McCoy relies on this court's decision in *Garfield Hts. v. Geer*, 8th Dist. Cuyahoga No. 87078, 2006-Ohio-5936 to support his argument that the city failed to establish the victim's subjective belief at the time of the offense that McCoy would cause him serious physical harm. In *Greer*, this court found that the evidence presented by the city did not establish that the victim subjectively believed at the time of the offense that Greer would cause the victim physical harm. *Greer* involved

a road rage incident. The victim testified that Greer had driven past him, braked abruptly twice, and brandished a gun. The victim testified that he did not know Greer, did not know if the gun was real, and did not otherwise testify that Greer's actions scared or rattled him. This court found the evidence was insufficient to prove that Greer's actions caused the victim to believe that Greer would cause him serious physical harm because the victim offered no testimony as "to any subjective belief that [the defendant] would cause [the victim] serious physical harm." *Greer* is factually distinguishable.

{¶ 22} In this case, McCoy was not a stranger to the victim; they had been neighbors for over a year. During that time, the victim stated that McCoy had made "little threats" to the victim, but the threats became increasingly "outrageous," to the point that the victim obtained an ex parte protection order just five days prior to the incident. Regarding the incident, the victim testified that he saw McCoy standing in the doorway of his apartment, and then waving a firearm across his body. The victim stated that McCoy's conduct intimidated him even though McCoy did not approach him, point the weapon at him, or say anything threatening toward him at that moment. (Tr. 17.) Additionally, once the victim was inside of his apartment, he heard McCoy making what the victim regarded as threats. McCoy acted knowingly because, according to the victim, he used a karaoke microphone and speaker, which would ensure that the victim and others would hear his statements, which included, "He's patient, and he's gone handle it even though he got to move. He'll come back here. Then you'll lose things you got." (Tr. 18.) The victim testified that based on

McCoy's action and statements, he "felt like [his] life was in danger cause he was going too far," and thus, he called the police. Accordingly, unlike in *Greer*, some evidence was presented where the victim had a subjective belief that serious physical harm would result from the defendant's actions.

{¶ 23} Viewing the evidence in a light most favorable to the city, sufficient evidence was presented supporting McCoy's conviction for aggravated menacing. The first assignment of error is overruled.

## B. Manifest Weight of the Evidence

{¶ 24} Although an appellate court may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, citing *State v. Robinson*, 162 Ohio St. 486, 487, 124 N.E.2d 148 (1955); *State v. Gatson*, 8th Dist. Cuyahoga No. 90268, 2009-Ohio-120, ¶ 25. In his second assignment of error, McCoy contends that his aggravated menacing conviction is against the manifest weight of the evidence.

{¶ 25} "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. * * * Weight is not a question of mathematics, but depends on its effect in inducing belief.'" *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12, quoting *Thompkins* at 387.

{¶ 26} In our manifest weight review of a bench trial verdict, we recognize that the trial court serves as the factfinder, and not the jury. *State v. Travis*, 8th

Dist. Cuyahoga No. 110514, 2022-Ohio-1233, ¶ 28, citing *State v. Crenshaw*, 8th Dist. Cuyahoga No. 108830, 2020-Ohio-4922, ¶ 23. "When considering whether a judgment is against the manifest weight of the evidence in a bench trial, an appellate court will not reverse a conviction where the trial court could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt." *State v. Tranovich*, 12th Dist. Butler No. CA2008-09-242, 2009-Ohio-2338, ¶ 7. To warrant reversal from a bench trial under a manifest weight of the evidence claim, this court must determine that "the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Crenshaw* at ¶ 23; *see also Thompkins*. The discretionary power to grant a new trial should be exercised only in exceptional cases where the evidence weighs heavily against the conviction. *Thompkins* at 386.

{¶ 27} This court finds that this case is one of those exceptional cases were a new trial should be ordered because the weight of the evidence demonstrates that the trial court lost its way in finding McCoy guilty of aggravated menacing. Although sufficient evidence was presented to support that McCoy's conduct caused the victim to believe that McCoy would cause him serious physical harm, the victim's own conduct and responses reveal that McCoy's conviction is against the manifest weight of the evidence. We make this finding in conjunction with finding merit to McCoy's third assignment of error in which he contends that the trial court deprived him of the opportunity to make a closing argument.

{¶ 28} The victim testified that he saw McCoy standing behind a closed screen-door in his own apartment and wave, what appeared to him to be a gun, across his body. He admitted that McCoy did not point the gun at him, threaten him with the gun, or make any movements toward him with the gun. The victim admitted that he did not return to his car and retreat from the scene, but he continued walking to his upstairs apartment. He testified that it was after he was inside of his own apartment when he heard McCoy making loud threatening statements — much like the "little" threats McCoy had previously made for the past 10-11 months. According to the victim, this caused him to call the non-emergency police dispatch number, because McCoy "was going too far." Despite the victim feeling "like [his] life was in danger," he did not call 911. During trial, the victim denied that his motivation to call the police was to get McCoy evicted, stating that he did not care if McCoy continued living there because he "had a protection order." Based on the foregoing, the victim's actions and responses were not of a person who has a subjective belief that McCoy was going to cause him serious physical harm. *Compare Greer*, 8th Dist. Cuyahoga No. 87078, 2006-Ohio-5936, at ¶ 10 (actions did not constitute subjective belief that defendant was going to cause victim serious physical harm where the defendant merely flashed a gun, victim did not retreat from the scene, or call the police until the victim arrived home).

{¶ 29} At best, the weight of the evidence reveals that McCoy's conduct could have amounted to the lesser offense of menacing or even disorderly conduct. Such inference is supported by the trial court's own conclusions in its colloquy with

McCoy. The trial court found that he was a "jerk," "obnoxious," "not acting right," and "bothering people." Additionally, the court further found that whether McCoy had a gun was irrelevant because his conduct caused the victim to be "scared" and to believe McCoy would cause "him harm." The crime of aggravated menacing, however, requires more than just fear and harm, it requires a belief of "serious physical harm." Accordingly, the presence of the firearm would be entirely relevant.

{¶ 30} Whether McCoy's conduct amounted to a lesser-included offense of aggravated menacing may be raised by the parties during trial, and specifically, at the close of evidence, often during closing argument. In this case, the trial court did not afford the prosecutor nor defense counsel the opportunity to present any summation before or after the finding of guilt and sentencing. In his third assignment of error, McCoy contends that the trial court's conduct deprived him of due process and a fair trial.

{¶ 31} The United States Supreme Court has held that a statute permitting a trial judge to deny a criminal defendant closing argument denies "the basic right of the accused to make his defense" in violation of the Sixth Amendment of the United States Constitution. *Herring v. New York*, 422 U.S. 853, 859, 95 S.Ct. 2550, 45 L.Ed.2d 593(1975). Thus, a trial court is not permitted to totally deny a criminal defendant the opportunity to present a closing argument whether his trial is to a jury or to the bench. *Id.*

{¶ 32} However, the right to present a closing argument may be waived. *State v. McCausland*, 124 Ohio St.3d 8, 2009-Ohio-5933, 918 N.E.2d 507, ¶ 7

(declining to extend *Herring* to create a presumption against waiver). The *McCausland* Court held that such a waiver need not be express, intentional, and voluntary, *id*. at ¶ 8-10, but rather, "[a] criminal defendant waives the Sixth Amendment right to present a closing argument when he or she neither requests a closing argument nor objects to its omission." *Id*. at syllabus.

{¶ 33} The city contends that McCoy waived the right to make a closing argument because he did not object, but also that his lengthy engagement with the trial court constituted an opportunity to present his theory of the case. While McCoy and the trial court engaged in a colloquy, McCoy at all times was represented by counsel, and this court has repeatedly held that a defendant is not entitled to hybrid representation. It is well established that a criminal defendant has the right to counsel or the right to act pro se; however, a defendant does not have the right to both, simultaneously, or hybrid representation. *See, e.g. State v. Williams*, 8th Dist. Cuyahoga No. 109972, 2021-Ohio-2032, ¶ 15; *see also State v. Hackett*, 164 Ohio St.3d 74, 2020-Ohio-6699, 172 N.E.3d 75. Accordingly, even if McCoy engaged in an exchange with the trial court following his testimony, such exchange is not a substitution for his counsel to present closing arguments.

{¶ 34} The trial court did not afford either party the opportunity to make a closing statement. This conclusion is supported by the fact that the trial court also did not afford either party an opportunity to offer any arguments in support or mitigation of sentencing. More importantly, the trial court deprived McCoy his right

to allocution prior to sentencing.[1] *Compare McCausland* (waiver of closing argument found where a pause in the proceedings occurred prior to rendering a verdict and a discussion occurred with counsel prior to sentencing).

{¶ 35} Even if this court found that McCoy waived the issue on appeal by failing to request closing argument or making an objection, this court would find that plain error exists warranting a new trial. It is clear that the trial court lost sight of the elements of the offense by focusing on McCoy's personality and attitude, even recommending at one point that he needed to attend "charm school." Closing argument would have allowed McCoy's counsel the opportunity to bring the focus back to McCoy's conduct giving rise to the case, not his conduct in the courtroom. Moreover, closing argument would have allowed counsel an opportunity to request any lesser-included offense based on the evidence presented.

{¶ 36} As explained by the United States Supreme Court in *Herring*:

> It can hardly be questioned that closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case.

---

[1] Crim.R. 32(A)(1), requires a court at sentencing to "address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment." This rule "'unambiguously require[s] that an offender be given an opportunity for allocution whenever a trial court imposes a sentence at a sentencing hearing.'" *State v. Jackson*, 150 Ohio St.3d 362, 2016-Ohio-8127, 81 N.E.3d 1237, ¶ 9-10, quoting *State v. Campbell*, 90 Ohio St.3d 320, 738 N.E.2d 1178 (2000), paragraph one of the syllabus. The genesis of this rule is the common law right of allocution. *See, e.g., Green v. United States*, 365 U.S. 301, 304, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961). This inquiry "is much more than an empty ritual: it represents a defendant's last opportunity to plead his case or express remorse." *State v. Green*, 90 Ohio St.3d 352, 359-360, 738 N.E.2d 1208 (2000). The right, which cannot be waived, applies to both felony and misdemeanor convictions. *Cleveland v. Amoroso*, 8th Dist. Cuyahoga No. 100983, 2015-Ohio-95, ¶ 58.

> For it is only after all the evidence is in that counsel for the parties are in a position to present their respective versions of the case as a whole. Only then can they argue the inferences to be drawn from all the testimony, and point out the weaknesses of their adversaries' positions. And for the defense, closing argument is the last clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant's guilt.

*Id.* at 862. In this case, that opportunity was completely denied. Accordingly, based on our conclusion regarding the weight of the evidence and the trial court's failure to afford him an opportunity to present any argument following the close of evidence, this court finds that McCoy was deprived of due process and a fair trial, such that his conviction for aggravated menacing must be reversed and remand for a new trial ordered. McCoy's second and third assignments of error are sustained.

{¶ 37} Having reversed McCoy's convictions under assignments of error two and three, his argument challenging the effective assistance of counsel under his fourth assignment of error is rendered moot. *See* App.R. 12(A)(2).

{¶ 38} Judgment reversed and remanded for a new trial.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution. Case remanded to the trial court for further proceedings.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., CONCURS;
MICHELLE J. SHEEHAN, J., CONCURS IN JUDGMENT ONLY (WITH SEPARATE OPINION)

MICHELLE J. SHEEHAN, J., CONCURRING IN JUDGMENT ONLY:

{¶ 39} Respectfully, I concur in judgment only. I fully agree with the majority's analysis and determination that the state presented sufficient evidence for McCoy's offense of aggravated menacing. I further agree with the majority's conclusion under a plain error review that his conviction should nonetheless be reversed. A detailed review of the trial transcript reflects that counsel was not afforded an opportunity to object or present closing argument before sentencing, which would have allowed counsel to contest the state's allegation that McCoy's conduct during the incident rose to the level of aggravated menacing.

{¶ 40} I, however, do not find this case warrants an exercise of our power to reverse a conviction based on a manifest-weight challenge. An appellate court will reverse a conviction based on such a challenge only when, after weighing the evidence and considering the credibility of witnesses, it determines that the trier of fact, in resolving conflicts in evidence, "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial

ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.* "An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances where the evidence presented at trial weighs heavily against the conviction." *State v. Taylor*, 8th Dist. Cuyahoga No. 110596, 2022-Ohio-614, ¶ 68.

{¶ 41} The evidence in this case consists only of appellant's and the victim's testimony. It is a case of "he said, he said" and turns entirely on the credibility of these two witnesses. My review of the transcript indicates the trial court was especially patient with appellant and allowed him to speak freely and at great length before determining his credibility and finding him guilty. In my view, this case presents a close question regarding the credibility of the witnesses and the evidence does not weigh heavily in favor of acquittal. Therefore, I do not find the trial court, as the trier of fact in this bench trial, "clearly lost its way" in believing the victim over appellant. This is not an exceptional case for us to invoke the power to reverse on a manifest-weight claim. For this reason, I concur in judgment only.