[Cite as *Cleveland v. Wiggins*, 2025-Ohio-649.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

CITY OF CLEVELAND,                   :

    Plaintiff-Appellee,         :

                                No. 113997

    v.                                  :

JOHN H. WIGGINS,                     :

    Defendant-Appellant.        :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED
**RELEASED AND JOURNALIZED:**  February 27, 2025

---

Criminal Appeal from the Cleveland Municipal Court
Case No. 2024-CRB-001691

---

***Appearances:***

Mark Griffin, Cleveland Director of Law, Aqueelah A. Jordan, Chief Prosecuting Attorney, and Michael Ferrari, Assistant Prosecuting Attorney, *for appellee.*

Gina Villa, *for appellant.*

DEENA R. CALABRESE, J.:

{¶ 1} Following a bench trial held March 28, 2024, in Cleveland M.C. No. 2024-CRB-001691, the trial court found defendant-appellant John Wiggins guilty of assault in violation of Cleveland Cod.Ord. 621.03.  It acquitted Wiggins on a charge of aggravated menacing as defined in Cleveland Cod.Ord. 621.06.  After a

post-adjudication psychiatric referral pursuant to R.C. 2947.06, the trial court sentenced Wiggins to 180 days in jail, with 90 days suspended and credit for 90 days of time served. The trial court also imposed one year of active community control, which included a requirement to attend anger-management classes. Finally, the trial court sentenced Wiggins to 50 hours of community work service and ordered him to have no contact with the victim.

{¶ 2} Wiggins timely appealed, raising seven assignments of error. Upon review of the record and relevant case law, we overrule the assignments of error and affirm the misdemeanor conviction and the trial court's sentence.

## I. Factual and Procedural History

{¶ 3} This case stems from an altercation between Wiggins and his apartment complex neighbor, Michael D. Davis, on March 6, 2024. As detailed below, Davis called Cleveland police claiming Wiggins had attacked him in a common area while he picked up his mail. Police arrived on scene and arrested Wiggins. The city charged Wiggins with assault and aggravated menacing, both misdemeanors, under the codified ordinances referenced above.

{¶ 4} A bench trial commenced and concluded on March 28, 2024. Following opening statements, the city called Davis as its sole witness. Davis, who was 61 years old at the time of the incident, testified he has lived in Cleveland his entire life, now with an address on Bellaire Road for "going on 13 years." (Tr. 12-13,

26.)[1]  Davis stated that on March 6, 2024, he went to his apartment's mailbox area to retrieve his mail.  The mailboxes for his apartment complex were located "on the First Floor, near the entry door, when you coming in to the apartments."  (Tr. 13-14.)

{¶ 5} Wiggins was present in the mail area.  Davis testified that prior to physical contact, Wiggins told Davis he "better be aware of him" any time Davis "come[s] down them stairs," and that Davis should "look out for him."  (Tr. 15-16.)  Davis stated he ignored Wiggins, who had made similar remarks in the past.  (Tr. 16.)  Davis also testified that Wiggins had previously threatened him by, for example, blocking the door, but that Wiggins had not earlier laid hands on him.  (Tr. 18.)

{¶ 6} After Davis retrieved his mail, he stopped to let a neighbor's cat in from outside, then turned around to go up the stairs and back to his apartment.  Davis testified that he "turned going up the stairs after the cat went upstairs," and that "[a]s soon as I hit the second stair, [Wiggins] pounced on my back."  (Tr. 15.)  Davis testified that Wiggins "landed on top of my back," that it "was a push and then like he fell on top of my back at the same time."  (Tr. 15.)

{¶ 7} Davis made his way back to his apartment and called Cleveland police within two to three minutes after the incident.  (Tr. 18-21.)  He denied any delay in

---

[1] The March 28, 2024 bench trial transcript will be cited as "(Tr. ___.)"  To the extent separate citations to the arraignment, pretrial, and sentencing transcripts are required, those transcripts will be identified with more specificity, i.e., "(Arraignment Tr. ___.)," "(Pretrial Tr. ___.)," and "(Sentencing Tr. ___.)."

reporting: "After it happened, I ran upstairs and called the police." (Tr. 21.) The trial court heard a recording of the 911 call, which was later admitted into evidence without objection. (Tr. 20, 37.)

{¶ 8} Davis identified Wiggins in open court as the person who had pushed him on the stairs. (Tr. 23.) He testified that he had "[n]ever put [his] hands" on Wiggins. (Tr. 22.) Davis stated that while he was "furious" with Wiggins after the incident, he was "controlling [himself]." (Tr. 24.) He also indicated that he had previously carried a "steel pole" when walking through the common area due to threats from Wiggins, and that he grabbed it again "for protection" as he waited for the police to arrive, concerned that Wiggins might "come up the stairs" or that he (Davis) would have to go down to meet with the police. (Tr. 25.)[2]

{¶ 9} Davis admitted that during the 911 call, he remarked that Wiggins was "lucky [he] didn't [shoot]" him, explaining that at night, unlike the morning when this incident occurred, Davis typically carries a firearm when he returns from work. (Tr. 24, 27.) He testified that his first thoughts after the incident were that he "wanted to . . . knock [Wiggins] in his head for putting his hands on me," but that he resisted temptation and called police instead. (Tr. 26-27.) He testified to no permanent injuries, but that his "shoulder been sore ever since." (Tr. 33.)

{¶ 10} The city rested, noting that while it had subpoenaed two Cleveland police officers to testify, neither of them appeared for the trial. (Tr. 37.) At that

---

[2] Davis later clarified that the steel pole is the handle of his hydraulic jack. (Tr. 29.)

point, Wiggins made a Crim.R. 29(A) motion, which the trial court overruled. (Tr. 38-41.) The defense called no witnesses and promptly rested. (Tr. 41.)

{¶ 11} The trial court announced its verdict immediately. It found Wiggins guilty of assault, but not guilty of aggravated menacing. (Tr. 51.)[3] After some outbursts from Wiggins, reflected in the transcript, the trial court both raised his bond and indicated it would order a psychiatric report. (Tr. 52-54.) It scheduled sentencing for April 24, 2024. (Tr. 56.)

{¶ 12} At sentencing on April 24, 2024, Wiggins indicated he "had an evaluation," but his attorney noted that while "there was a report," he "didn't see the actual report." (Sentencing Tr. 4-5.) The trial court inquired whether Wiggins had ever taken an anger-management class. Wiggins responded that he had. When asked if it did him any good, Wiggins answered in the affirmative. (Sentencing Tr. 7-8.) The trial court indicated that per the probation department's presentence-investigation report, "[t]hey recommend community mental health because of his (inaudible) and anger management class." (Sentencing Tr. 8.)

{¶ 13} As noted above, the trial court sentenced Wiggins to 180 days in jail, with 90 days suspended and credit for 90 days of time served. It further imposed one year of active community control (including anger-management classes),

---

[3] As noted by defense counsel in his closing argument, the aggravated-menacing charge stemmed principally from an allegation that Wiggins had brandished a knife during the incident. (Tr. 44.) Davis, however, did not testify that Wiggins had wielded a knife or any other weapon.

sentenced Wiggins to 50 hours of community work service, and ordered that he have no contact with the victim.

## II. Analysis

## A. First Assignment of Error

{¶ 14} In his first assignment of error, Wiggins contends the "trial court erred when it ignored results of the psychiatric referral." In his argument, he clarifies that he means that he "may have been incompetent to stand trial." (Appellant's brief at vi, 3.)

{¶ 15} "A defendant is incompetent when he 'is incapable of understanding the nature and objective of the proceedings against [him] or of assisting in [his] defense.'" *State v. Mills*, 2023-Ohio-4716, ¶ 11, quoting R.C. 2945.37(G). The issue of competency may be raised by the prosecutor, the defense, or the court itself. *Id.* at ¶ 12. Here, the issue of competency was raised by no one at any point in the proceedings, and Wiggins admits that a criminal defendant is presumed to be competent, citing *State v. Williams*, 2003-Ohio-4164, ¶ 62. *See also Mills* at ¶ 12.

{¶ 16} We recognize that during Wiggins's arraignment on March 8, 2024, defense counsel indicated on the record that Wiggins had refused to sign the no-contact order, that she had "had problems" with Wiggins, and that she thought "there's some potential mental health issues here." (Arraignment Tr. 2.) When the arraignment judge pressed Wiggins on his refusal to acknowledge the no-contact order, Wiggins replied that he was "a mental health patient," that he "was supposed to have a mental health Judge," and that he "need[ed] a mental health Judge."

(Arraignment Tr. 3-4.) Neither arraignment counsel nor trial counsel, however, requested a competency evaluation. As the Ohio Supreme Court wrote in *Mills*:

> We explained in *Bock* that incompetency is measured by the statutory criteria — the ability to understand the nature and objective of the proceedings and to assist in one's defense. . . . Thus, "[i]ncompetency must not be equated with mere mental or emotional instability or even with outright insanity." . . . Indeed, "[a] defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel."

*Id.* at ¶ 15, quoting *State v. Bock*, 28 Ohio St.3d 108, 110 (1986).

{¶ 17} Here, as in *Williams*, "the record . . . reveals no 'indicia of incompetence' that would require a competency hearing." *Williams* at ¶ 62. Indeed, Wiggins's remarks at his arraignment suggested that despite possible mental-health issues, he understood the nature and objective of the proceedings and could assist in his own defense; Wiggins essentially demanded that a judge on a specialized mental-health docket preside over his case. Rather than suggesting incompetency, this self-advocacy signaled that Wiggins fully understood what was transpiring in court. *See also Bock* at 111 ("The record reveals no adequate indication of any behavior on the part of the defendant which might indicate incompetency. Nor is there any expert or lay opinion in the record that defendant was actually incompetent."). The first assignment of error is overruled.

## B. Second Assignment of Error

{¶ 18} In his second assignment of error, Wiggins argues that he was denied his right to trial by jury. "'A criminal defendant's right to a jury trial is guaranteed in the Sixth and Fourteenth Amendments to the United States Constitution and

Article I, Sections 5 and 10, of the Ohio Constitution.'" *State v. Krill*, 2023-Ohio-1216, ¶ 10 (8th Dist.), quoting *State v. Morris*, 2019-Ohio-3184, ¶ 31 (8th Dist.). The right to trial by jury, however, is not absolute in all criminal cases. R.C. 1901.24 provides both that "[a] jury trial in a municipal court shall be demanded in the manner prescribed in the Rules of Civil Procedure or the Rules of Criminal Procedure," and also that "[t]he right of a person to a jury trial in a municipal court is waived under the circumstances prescribed in the Rules of Civil Procedure or the Rules of Criminal Procedure." *Id*.

{¶ 19} The Rules of Criminal Procedure distinguish between "serious crimes" and "petty offenses." Crim.R. 2. While the right to a jury trial is automatic in cases involving a serious crime, if the charged crime is a petty offense — one involving six months' incarceration or less — a defendant waives the right to trial by jury by neglecting to file a written jury demand. Crim.R. 23(A) provides, in pertinent part:

> In petty offense cases, where there is a right of jury trial, the defendant shall be tried by the court unless he demands a jury trial. Such demand must be in writing and filed with the clerk of court not less than ten days prior to the date set for trial, or on or before the third day following receipt of notice of the date set for trial, whichever is later. *Failure to demand a jury trial as provided in this subdivision is a complete waiver of the right thereto.*

(Emphasis added.) *Id*. *See also Cleveland Hts. v. Jackson*, 2003-Ohio-6486, ¶ 4-5 (8th Dist.).

{¶ 20} The City of Cleveland charged Wiggins with assault and aggravated menacing in violation of Cleveland ordinances. Both are first-degree misdemeanors, which are "punishable by a jail term of not more than one hundred

eighty days" pursuant to R.C. 2929.24(A)(1). As such, they qualify as petty offenses, and a written jury demand was required.[4]

{¶ 21} During a March 13, 2024 pretrial before a court magistrate, Wiggins repeatedly stated he wanted his case set for trial. (Pretrial Tr. 2-3.) His trial counsel evidently recognized the need for a written jury demand. He stated on the record:

> We'd like to set this matter for a trial. Um, I've only spoke to Mr. Wiggins about this issue this morning, *so I will be going back to my office to file a jury demand*, but he's indicated he would like a jury trial.

(Emphasis added.) (Pretrial Tr. 2-3.)

{¶ 22} Moments later, there was yet another exchange regarding a jury demand. The magistrate made a remark transcribed as "inaudible," and Defense counsel responded: "Yes. I was just looking at this jury demand issue." (Pretrial Tr. 4.) After a further exchange, evidently to confirm a good trial date, the magistrate indicated: "(Inaudible) jury (inaudible). Is that accurate?" (Pretrial Tr. 4.) The pretrial transcript contains no further explicit exchanges regarding a jury demand. The record, however, does not reflect that defense counsel filed a jury demand.

{¶ 23} The same defense attorney represented Wiggins at his March 28, 2024 trial. After a brief discussion between the trial court and Wiggins regarding the latter's family history, the trial court inquired: "[W]hat's this rascal doing here today, Mr. Public Defender?" (Tr. 5.) The following exchange ensued:

---

[4] We have long rejected the "aggregation theory" in petty offense cases, i.e., the notion that because a defendant is tried on multiple petty offenses exposing him "to a possible aggregate sentence in excess of six months," the petty offenses are transformed into serious crimes requiring an explicit waiver of trial by jury. *Cleveland v. Oppman*, 1994 Ohio App. LEXIS 4002, *6-7 (8th Dist. Sept. 8, 1994).

[DEFENSE COUNSEL]: Well, Judge, we're set for a bench trial today.

THE COURT: Bench trial? Really?

[PROSECUTOR]: Yes, your Honor.

(Tr. 5.) Prior to opening statements (and after rejecting the final offer of a plea agreement), Wiggins himself openly remarked that he "asked for jury trial from the beginning." (Tr. 8.) The court's only response was to indicate "[w]e're gonna do this trial today." (Tr. 8.) The trial transcript contains no further references to a jury demand, and nothing in the transcript or any other portion of the record indicates that defense counsel requested a continuance or otherwise raised the issue of trial by jury.

{¶ 24} Wiggins failed to file a written jury demand in compliance with Crim.R. 23(A). He waived his right to trial by jury. The second assignment of error is overruled.

## C. Third Assignment of Error

{¶ 25} In his third assignment of error, Wiggins argues that the trial court erred in refusing to grant his Crim.R. 29 motion and dismiss the charges based on failure to prove venue. In making that motion, Wiggins's counsel had argued:

> [T]he City has failed to prove venue in this situation. We heard no testimony about where the address of this incident occurred. We heard no testimony that this incident occurred here in Cuyahoga County. Without that testimony, this Court can't have jurisdiction over this case, and we'd ask for it to be dismissed.

(Tr. 39.)

{¶ 26} "Because a Crim.R. 29 motion questions the sufficiency of the evidence, '[w]e apply the same standard of review to Crim.R. 29 motions as we use in reviewing the sufficiency of the evidence.'" *State v. Metz*, 2019-Ohio-4054, ¶ 54 (8th Dist.), quoting *State v. Hernandez*, 2009-Ohio-5128, ¶ 6 (10th Dist.). We discuss the concept of sufficiency in more detail below. In sum, however, "[w]e construe the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt." *Metz* at ¶ 55, citing *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 27} In his brief, Wiggins argues that while Davis testified that he and Wiggins both "have apartments in the City of Cleveland," the incident did not happen at either apartment, but only after "Mr. Davis left his apartment and walked elsewhere." (Appellant's brief at 6.) He claims that "[i]t was never specifically established that this other location is in the City of Cleveland." *Id*. at 7. These arguments are belied by the trial transcript. After testifying that he lived at the same Cleveland address for almost 13 years, Davis stated that the incident occurred while he was "at [his] mailbox getting [his] mail," and that those mailboxes are "located on the First Floor, near the entry door, *when you coming in to the apartments*, to your right." (Emphasis added.) (Tr. 12-14.) This was sufficient to establish that the incident occurred at the Cleveland apartment building that Davis identified with a specific address, and therefore that venue was appropriate. Wiggins's third assignment of error is overruled.

## D. Fourth Assignment of Error

{¶ 28} In his fourth assignment of error, Wiggins argued that the trial court improperly admitted Davis's recorded 911 call. Defense counsel raised a hearsay objection prior to the recording being played. (Tr. 20.) The trial court directed defense counsel to explain his objection "after we listen to it," to which counsel replied, "[t]hat's fine." (Tr. 20.) The transcript does not reflect any further explanation or renewed objection. More importantly, when the city rested and offered the 911 recording as its sole exhibit, the trial court asked defense counsel if there was any objection to its introduction. Defense counsel responded: "Without objection, your Honor." (Tr. 37.) "As the defense failed to object to the 911 tape at trial, all but plain error was waived." *State v. Drummond*, 2006-Ohio-5084, ¶ 187.

{¶ 29} In *State v. Lucas*, 2024-Ohio-842 (8th Dist.), we recently reiterated:

> This court has recognized that statements made during a 911 call are often found to be nontestimonial and are admissible if the statements satisfy a hearsay exception. This is because a 911 caller is typically speaking about events as they are actually happening and although one might call 911 to provide a narrative report of a crime absent any imminent danger, 911 callers are usually facing ongoing emergencies. Under such circumstances, the 911 caller is not testifying, the 911 caller is not acting as a witness, and the statements of the 911 caller are not testimonial in nature.

(Cleaned up.) *Id*. at ¶ 29. Here, Davis testified that he made the 911 call "[m]aybe two or three minutes" after Wiggins attacked him, explaining that he "ran upstairs and called the police." (Tr. 21.) He testified that during the call, he was "very upset, as you hear." (Tr. 21-22.) When the trial court handed down its verdict, it referenced

the 911 call, indicating, "I could hear it in his voice.  *He was excited.*  He was hurt." (Emphasis added.)  (Tr. 51.)

{¶ 30} Moreover, as in *Cleveland v. Myles*, 2022-Ohio-4504 (8th Dist.), "this case was tried to the bench."  *Id*. at ¶ 16.  "'When the trial court is the trier of fact, the judge is presumed capable of disregarding improper hearsay evidence, and unless it is demonstrated that the court relied on inadmissible hearsay, a conviction will not be reversed.'"  *Id*., quoting *State v. Crawford*, 2013-Ohio-1659, ¶ 61 (8th Dist.).

{¶ 31} Wiggins's Confrontation Clause arguments are likewise unavailing. To the extent they relate to any comments made by Davis during the 911 call, he was the victim in the case and was subject to cross-examination.  That cross-examination included probing questions concerning the remarks he made during the 911 call. (Tr. 27-28.)  To the extent Wiggins contends he was unable to confront the dispatcher, the law is clear that the Confrontation Clause is implicated only by *testimonial* out-of-court statements.  Wiggins has not directed us to any 911 excerpts at all, much less an excerpt supporting the proposition that the dispatcher made testimonial statements that rendered the dispatcher a witness against him, thereby implicating the Confrontation Clause.  *See State v. Johnson*, 2023-Ohio-445, ¶ 32 (8th Dist.).

{¶ 32} Wiggins's argument that the 911 recording was unauthenticated fails because prior to the call being played for the trial court, Davis was asked if he would recognize his own voice.  Upon hearing the recording, he confirmed: "That's me."

(Tr. 19-20.) In addition, there was no suggestion that the recording had been altered in any fashion, and as the city points out, chain-of-custody issues go to weight rather than admissibility. *See State v. Guyton*, 2016-Ohio-8110, ¶ 31 (11th Dist.). There was no plain error in admitting the 911 recording. *See Drummond*, 2006-Ohio-5084, at ¶ 187-188. Wiggins's fourth assignment of error is overruled.

## E. Fifth Assignment of Error

{¶ 33} In his fifth assignment of error, Wiggins argues that the trial court's verdict is against the manifest weight of the evidence and not supported by sufficient evidence. We disagree, turning first to sufficiency and then to manifest weight.

### 1. Sufficiency of the Evidence

{¶ 34} We have recently reaffirmed that "[a]n appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Spencer*, 2024-Ohio-5809, ¶ 15 (8th Dist.), citing *State v. Murphy*, 2001-Ohio-112. The appellate court views the evidence "'in a light most favorable to the prosecution'" to determine whether "'any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Spencer* at ¶ 15, quoting *Jenks*, 61 Ohio St.3d 259 (1991), at paragraph two of the syllabus. The inquiry is whether the prosecution has met its "burden of production" at trial. *State v. Dyer*, 2007-Ohio-1704, ¶ 24 (8th Dist.). "'In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a

question of law.'" *Cleveland v. Williams*, 2024-Ohio-3102, ¶ 10 (8th Dist.), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *see also Cleveland v. Neal*, 2024-Ohio-1467, ¶ 26 (8th Dist.).

{¶ 35} Cleveland Cod.Ord. 621.03(a) provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another." The city's sole witness, Davis, provided testimony sufficient to establish that Wiggins committed the misdemeanor assault offense as described in the ordinance. While Davis admitted that he did not have "eyes in the back of [his] head," (tr. 33), and his descriptions of the mechanics of the assault were occasionally inartful, he testified that on this occasion Wiggins pushed or shoved him from behind, or "jumped on [his] back" while walking up the stairs to return to his apartment.

{¶ 36} The trial judge observed Davis on the witness stand and was privy to the tone of his voice and his body language. The trial judge was able to consider the verbal and visual cues that hint at truthfulness, deceit, and the subtle mixture of both. The trial court further relied upon the tone of Davis's voice during the 911 call, and we have already held that the trial court did not err by admitting the 911 call into evidence. After closing arguments, and before finding Wiggins guilty, the trial judge commented: "I heard the 9-1-1 tape. You heard the 9-1-1 call. I could hear it in his voice. He was excited. He was hurt." (Tr. 51.)

{¶ 37} We do not independently weigh the evidence in our sufficiency analysis. *State v. Hill*, 75 Ohio St.3d 195, 205 (1996). There was sufficient evidence to convict Wiggins of assault in violation of Cleveland Cod.Ord. 621.03(a). The city

met its burden of production, and a rational trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt. *Dyer*, 2007-Ohio-1704, at ¶ 24 (8th Dist.); *Spencer*, 2024-Ohio-5809, at ¶ 15 (8th Dist.).

### 2. Manifest Weight of the Evidence

{¶ 38} "In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion." *State v. Hill*, 2013-Ohio-578, ¶ 32 (8th Dist.). "In our manifest weight review of a bench trial verdict, we recognize that the trial court serves as the factfinder, and not the jury." *Cleveland v. McCoy*, 2023-Ohio-3792, ¶ 26 (8th Dist.), citing *State v. Travis*, 2022-Ohio-1233, ¶ 28 (8th Dist.); *see also Cleveland v. Hale*, 2024-Ohio-2712, ¶ 4 (8th Dist.) (analyzing manifest weight issue in context of bench trial); *Cleveland v. Clark*, 2024-Ohio-4491, ¶ 45 (8th Dist.) (same); *State v. Kennedy*, 2024-Ohio-1586, ¶ 65 (8th Dist.) (same). Accordingly, we have previously written:

> "[T]o warrant reversal from a bench trial under a manifest weight of the evidence claim, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed, and a new trial ordered."

*Kennedy* at ¶ 65, quoting *State v. Strickland*, 2009-Ohio-3906, ¶ 25 (8th Dist.). An appellate court will reverse on manifest weight "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *State v. McLoyd*, 2023-Ohio-4306, ¶ 40 (8th Dist.), quoting *Thompkins*, 78 Ohio St.3d at 387 (1997).

{¶ 39} As noted above, Davis's descriptions of the assault were sometimes inartful, with terms such as "pushed," and "jumped on" used interchangeably. As to whether an attack took place, however, Davis was consistent and unwavering. He testified he was pushed, shoved, or jumped from behind by Wiggins, and he stuck to that claim when subjected to vigorous cross-examination. For example, when pressed on whether the contact may have been accidental, he testified: "As far as I'm concerned, he jumped on my back. That's all I know." (Tr. 33.) In addition, the trial court considered all the evidence and found Wiggins not guilty of aggravated menacing, reflecting careful evaluation of the testimony in light of applicable law.

{¶ 40} Having independently reviewed the record, we cannot conclude that this is the exceptional case where the trial court clearly lost its way and created a manifest miscarriage of justice. The fifth assignment of error is overruled.

### F. Sixth Assignment of Error

{¶ 41} In his sixth assignment of error, Wiggins argues that the trial court abused its discretion by sentencing him to attend anger-management classes. He argues that "[t]his sanction does not relate to the facts of the case." (Appellant's brief at 13.) A trial court, however, has "broad discretion when sentencing a defendant in a misdemeanor case," and as Wiggins correctly notes, its sentence "will not be disturbed absent an affirmative showing of an abuse of discretion." *Cleveland v. Boyd*, 2023-Ohio-459, ¶ 9 (8th Dist.); *Euclid v. Gage-Vaughn*, 2006-Ohio-1941, ¶ 28 (8th Dist.).

{¶ 42} In *Boyd*, another misdemeanor case, we noted that "[a] trial court is authorized to impose a sentence of community-control sanctions in misdemeanor offenses pursuant to R.C. 2929.27(A)," and that "a court 'may impose any other sanction that is intended to discourage the offender . . . from committing a similar offense if the sanction is reasonably related to the overriding purposes and principles of misdemeanor sentencing.'" *Boyd* at ¶ 10, quoting R.C. 2929.27(C). In that regard, "[i]n fashioning a misdemeanor sentence, a trial court must consider the overriding purposes of misdemeanor sentencing 'to protect the public from future crime by the offender and others and to punish the offender.'" *Lakewood v. Dobra*, 2018-Ohio-960, ¶ 9 (8th Dist.), quoting R.C. 2929.21. The trial court must consider all the factors enumerated in R.C. 2929.22(B), but it "is not required to make factual findings on the record related to these factors." *Dobra* at ¶ 10. *See also Maple Hts. v. Sweeney*, 2005-Ohio-2820, ¶ 8 (8th Dist.); *Boyd* at ¶ 11.

{¶ 43} Community-control conditions "must reasonably relate to the goals of community control: 'rehabilitation, administering justice, and ensuring good behavior.'" *State v. Mahon*, 2018-Ohio-295, ¶ 7 (8th Dist.), quoting *State v. Talty*, 2004-Ohio-4888, ¶ 16; *see also Boyd* at ¶ 12. As we observed in *Boyd*:

> In *State v. Jones*, 49 Ohio St.3d 51, 53, 550 N.E.2d 469 (1990), the Ohio Supreme Court set forth a test for determining whether community-control conditions reasonably relate to these goals. The trial court must consider whether the condition is (1) reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct that is criminal or reasonably related to future criminality and serves the statutory ends of probation. "All three prongs of the *Jones* test must be

satisfied for the reviewing court to find that the trial court did not abuse its discretion."

*Boyd* at ¶ 12, quoting *Mahon* at ¶ 8.

{¶ 44} In *Boyd*, 2023-Ohio-459 (8th Dist.), surveillance cameras captured the defendant tearing down political signs at a gas station. Boyd pleaded guilty to a single count of criminal mischief. Boyd's sentence included community-control sanctions, specifically "two years of active probation, including completing [a community-orientation program], [community-awareness program], *anger management*, and [substance-abuse assessment and counseling] programs." (Emphasis added.) *Boyd* at ¶ 5. "He was also required to submit to [a mental-health assessment] to determine his eligibility for the mental health docket and submit to [substance-abuse testing]." *Boyd* at ¶ 5.

{¶ 45} On appeal, Boyd's single assignment of error challenged the various community-control sanctions, including the referral to anger management. *Id.* at ¶ 7. His core argument was that he had merely committed "a nonviolent offense against property." *Id.* at ¶ 8. Like Wiggins, he focused on the second prong of the *Jones* analysis, contending that the various community-control sanctions bore no relationship to the crime of which he was convicted. *Id.* at ¶ 13. We agreed with Boyd on the substance-abuse components of the community-control sanctions, finding that the record did not suggest that his crime was related to substance abuse, and those sanctions therefore did not have "any nexus to this offense." *Id.* at ¶ 15.

{¶ 46} We nevertheless upheld the anger-management and mental-health assessment ("MHA") components of the community-control sanctions, noting that "anger management and the MHA both contribute to the rehabilitation of defendants because they both fall under the umbrella of mental health treatment and are designed to rehabilitate individuals by their very nature." *Id.* at ¶ 16. With respect to the second *Jones* factor, we noted that "'[t]he community control sanctions are to be related to the *circumstances* of the offense, but the sanctions do not necessarily need to relate only to the conviction itself.'" (Emphasis in original.) *Id.* at ¶ 16, quoting *S. Euclid v. Bickerstaff*, 2019-Ohio-2223, ¶ 20 (8th Dist.). As we elaborated in *Bickerstaff*, "[i]t is well established that the court may consider information beyond that strictly related to the conviction of the offense." *Id.*

{¶ 47} Here, despite Wiggins's arguments to the contrary in his brief, there was testimony that Wiggins had threatened Davis in the past. More importantly, unlike in *Boyd*, the trial court convicted Wiggins of a violent offense, not an offense against property; we have already determined that the assault conviction was supported by sufficient evidence and was not against the manifest weight of the evidence. Furthermore, the trial court noted that the probation department had recommended anger-management classes, and the trial court even asked Wiggins if he had taken such a class before and whether it had done him some good. Wiggins answered affirmatively. In light of these facts, and in considering the *Jones* factors and the cases discussed above, the trial court did not abuse its discretion by

imposing community-control sanctions that included anger-management classes. The sixth assignment of error is overruled.

## G. Seventh Assignment of Error

{¶ 48} In his seventh and final assignment of error, Wiggins argues that the trial and arraignment courts were biased against him. In his brief, he elaborates by stating that this "result[ed] in excessive jail time." (Appellant's brief at 16.) Wiggins argues that just after trial had concluded, the court improperly increased his bond due to his outbursts, which included referring to the trial judge as "man." (*See* tr. 53-54.) He further argues that the arraignment judge was terse with him and dismissively disregarded his attempts to elaborate on his mental-health issues and seek specialized court services.

{¶ 49} "In general, appellate courts have 'no authority to determine a claim that a trial judge is biased or prejudiced against a defendant and no authority to void a trial court's judgment based on a claim that the trial judge is biased or prejudiced.'" *State v. Bastawros*, 2024-Ohio-2809, ¶ 17 (8th Dist.), quoting *State v. Frazier*, 2017-Ohio-8307, ¶ 16 (8th Dist.). We note, however, that "[a]lleged due-process violations . . . may be addressed on appeal." *State v. Hunt (In re Thomakos)*, 2020-Ohio-6874, ¶ 4, citing *State v. Jackson*, 2016-Ohio-5488, ¶ 43. *See also Bastawros* at ¶ 19; *State v. Munoz*, 2023-Ohio-1895, ¶ 24 (8th Dist.).

{¶ 50} Wiggins did not file any affidavit of disqualification pursuant to R.C. 2701.03.[5]  With respect to due process, he acknowledges that his "burden [in] presenting this argument is steep." (Appellant's brief at 16.); *see Bastawros* at ¶ 19. In that regard, we have previously held:

> Opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.  Importantly, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.  Typically, an offender must demonstrate the bias through linking the impermissible commentary to the decisions rendered at trial.  If the offender demonstrates that the trial was infected with judicial bias, the remedy is a new trial.

(Cleaned up.)  *Bastawros* at ¶ 19.  *See also State v. Browning*, 2023-Ohio-1887, ¶ 29 (8th Dist.).

{¶ 51} With respect to the bench trial, Wiggins relies only on the trial court's statements after the verdict had been rendered, i.e., the trial court's reaction to Wiggins's disrespectful references to the trial judge as "man."  "[V]iewing the transcript as a whole, and taking all of the judge's comments in their proper context, we see nothing to suggest that the trial court harbored a hostile feeling of ill will toward" Wiggins.  *State v. LaMar*, 2002-Ohio-2128, ¶ 36.  Moreover, even if we assume the arraignment judge was unduly dismissive of Wiggins's mental-health

---

[5] We are mindful that the arraignment was completed within minutes and that the bench trial — presided over by a different judge — was completed in a single day.  We do note, however, that despite the purported bias at trial, Wiggins made no attempt to disqualify the trial judge from presiding over his sentencing.

concerns, there is no indication that any purported bias carried over into the trial before a different judge.  Wiggins's seventh assignment of error is overruled.

{¶ 52} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
DEENA R. CALABRESE, JUDGE

LISA B. FORBES, P.J., and
SEAN C. GALLAGHER, J., CONCUR